**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| v. | **Case No. 26-20058-01-DDC** |
| **MARIO DEL TORO-SANDOVAL,** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

United States Magistrate Judge Jennifer B. Wieland denied the United States' Motion for Detention and ordered defendant Mario Del Toro-Sandoval released pending trial, subject to conditions. *See* Doc. 16 (denying detention); Doc.14 (setting conditions of release). The government promptly moved to review Judge Wieland's decision and, separately, moved to stay execution of her release Order. Doc. 15. The court granted the stay motion and set the matter for a hearing.[1] Doc. 17. The court convened that hearing on June 25, 2026.

This Order memorializes the ruling on the stay motion, granting Doc. 15 to permit the court to conduct a de novo review of the detention decision. This Order also decides the

---

[1] The government has made a bit of a procedural mess by filing multiple documents, Doc. 12 and Doc. 15—both of which are docketed as motions for this court to rule. As relevant here, 18 U.S.C. § 3145(a)(1) empowers the government to move the district court to revoke a magistrate judge's order of release. Only Doc. 15 cites this statute. Doc. 15 at 1. Though titled (strangely) as an "Application," the court construes Doc. 15 as a motion to revoke under § 3145(a)(1).

On the other hand, Doc. 12 doesn't cite § 3145(a)(1). Nor does Doc. 12 call itself a motion. Instead, Doc. 12 is the "United States' Appeal/Review of Magistrate Judge's Order of Release." Unlike Doc. 15, Doc. 12 contains the government's substantive arguments about detention. It reads like a brief. Yet the government filed the document as a motion for review. As best the court can tell, the government filed Doc. 12 to supplement its request captured in Doc. 15—the motion to revoke the magistrate judge's order of release . So, the court construes Doc. 12 as a supplemental motion for revocation under § 3145(a)(1). In the future, the court hopes the government will consider more efficient procedural mechanisms to ask for the relief it seeks.

detention issue and memorializes the court's reasons for that outcome. For reasons explained below, the court orders defendant detained pending trial.

## I.    BACKGROUND

The grand jury found probable cause that Mr. Del Toro-Sandoval had violated 8 U.S.C. § 1326(a) and (b)(1), a felony charge commonly called unlawful reentry after deportation. Doc. 1 at 1. More specifically, the Indictment charges that immigration officials removed Mr. Del Toro-Sandoval from the United States on May 20, 2011, in Laredo, Texas. The Indictment's lone charge followed defendant's arrest near Chanute, Kansas, by the Kansas Highway Patrol on May 25, 2026. A Kansas Highway Patrol Trooper arrested Mr. Del Toro-Sandoval because he allegedly was operating a motor vehicle without a valid driver's license. The Indictment here followed and, on June 5 of this year, the government asked the Magistrate Judge to detain defendant. The government claimed that defendant, if released, presented: (a) a serious risk of flight; and (b) a danger to the community. The Magistrate Judge rejected Mr. Del Toro-Sandoval's argument that no detention hearing was warranted and as recited above, convened the referenced detention hearing. The Magistrate Judge found that "there are conditions of release that will reasonably assure [defendant's] appearance and the safety of others and the community." Doc. 16 at 9. She specified those conditions in a separate order. Doc. 14. So, Mr. Del Toro-Sandoval was slated for release.

But before his release, the United States announced a plan to appeal the release decision under 18 U.S.C. § 3145(a)(1). *See* Doc. 15 at 1. It thus asked the Magistrate Judge to stay her release order. And she did so, staying Mr. Del Toro-Sandoval's release until June 16, 2026. The United States then asked the court to stay defendant's release until it could conduct a hearing on its appeal, and the court extended that stay. Doc. 16. The hearing necessitated by the

government's motion for review followed on June 25, 2026, and Mr. Del Toro-Sandoval was detained by the Attorney General while the review process completed.

## II.    FINDINGS OF FACT

The court makes these findings of fact.  It bases them on the credible segments of counsel's proffers during the June 25 hearing and the Pretrial Services Report (Doc. 11).  The court begins with Mr. Toro-Sandoval's ties to Kansas, then considers his personal characteristics, and concludes with his criminal history.

Mario Del Toro-Sandoval is not a resident of the District of Kansas.  Indeed, he has spent a total of three weeks living in an Airbnb in Iola, Kansas, before his arrest.  He never has lived in the Kansas City metropolitan area and, except his time in Iola, seems not to have lived anywhere in this judicial district.  Mr. Del Toro-Sandoval lives in Waco, Texas, where his wife, a United States citizen, owns a home.  She and the defendant have been together since 2021, and they married in 2023.  The defendant's wife has lived in her house for 28 years, and he has lived there for about five years.  It is there he proposes to return (and reside), if released.

Our Pretrial Services Department interviewed Mr. Del Toro-Sandoval's wife, and she stated that if the court released him, his family would provide him with transportation to future court dates here in the District of Kansas.  It's unclear which family members would provide this support as his father is deceased, his mother lives in Mexico, and his three sisters live in Mexico. Perhaps his wife meant she would provide the requisite transportation as she is an American citizen.  Also, Mr. Del Toro-Sandoval's wife reported that she sustained a stroke in 2021, and there are times where she needs his help.  In sum, defendant was arrested in our judicial district while visiting it temporarily for work purposes.  He thus lacks strong ties to the District of Kansas—as one would expect of any person visiting a place where he's never lived.

Mr. Del Toro-Sandoval reported that his mother and three sisters live in Mexico, and he has daily contact with them. Mr. Del Toro-Sandoval's wife asserted, however, that one of the three sisters lives in San Antonio, Texas, but spends a good deal of her time in Mexico. So, Mr. Del Toro-Sandoval also has strong ties to individuals in a foreign country.

Mr. Del Toro-Sandoval's employment is not the kind of job or arrangement that naturally builds ties to the community. He's a contract welder. This is the work that brought him to Kansas in May 2026. It's seasonal work. Mr. Del Toro-Sandoval's wife reported that he has worked in this industry since 2021, and there are periods when he is unemployed. His wife also asserted that she serves as the family's main provider, working in an office job in the quality department of a pharmaceutical company. In short, defendant's employment does not bind him to the community where he lives—Waco, Texas.

Turning to Mr. Del Toro-Sandoval's financial resources, the financial affidavit he submitted under penalty of perjury reported limited financial resources, which led the court to appoint counsel to represent him. While limited financial resources is a factor that can cut both ways, this defendant earns a good income when he is working, which will occur only if he is released.

Mr. Del Toro-Sandoval has no mental-health concerns, nor are there any indications or any history of substance abuse. Mr. Del Toro-Sandoval reports he has diabetes, high blood pressure, and high cholesterol. He also reports that he takes medication for all three conditions. It appears he's managing these conditions on his own but, likewise, nothing suggests that any of them present complexities that a detention facility would struggle to manage.

There's no record suggesting that Mr. Del Toro-Sandoval ever has failed to appear for court proceedings. But his criminal-history does include an offense in 2002 referred to as

4

"Deadly Conduct" in Fort Worth, Texas.  The offense sounds serious but, in proceedings before the Magistrate Judge, the prosecutor reported that it's a misdemeanor offense under Texas law. And despite the ominous sound of this crime, the Pretrial Services Report indicates the defendant was "[s]entenced to confinement" but this component of the sentence was suspended in favor of 12 months probation.  The same Report indicates that the defendant successfully completed his probationary sentence for this conviction, showing he was discharged about one year after sentence was imposed.  Also, this arrest occurred more than 24 years ago, when defendant was 22 years old.

Mr. Del Toro-Sandoval's treatment of our immigration laws is concerning.  He was convicted in 2009 for llegal Entry into the United States and sentenced to six months in prison. Doc. 11 at 4.  Though not stated explicitly, it's likeliest that immigration authorities removed Mr. Del Toro-Sandoval from the United States after he completed this sentence for he was convicted again—this time for illegal reentry—in 2010.  He served another custody sentence on this second immigration crime, this time serving eight months.  Last, it seems evident that he re-entered the United States before the May 2026 arrest leading to this case.  He's never contended that any authority of the United States had granted permission for his last reentry.

There's one last entry in Mr. Del Toro-Sandoval's criminal history:  a traffic stop in Chanute, Kansas on May 25, 2026.  It's asserted that Mr. Del Toro-Sandoval was operating a motor vehicle of some sort but lacked any valid license authorizing him to do so.[2]

---

[2]     The government argued Mr. Del Toro-Sandoval had used aliases in the past and this conduct weighs against release.  One of the two alleged "aliases" listed by the government was "Mario Alfonzo Deltoro"—the name under which the State of Texas convicted defendant during the 2002 prosecution in Tarrant County, Texas.  If defendant used this name as an alias, it was a poorly contrived one.  The difference between the alleged alias and defendant's real name is minor, and wouldn't fool anyone for long, *i.e.*, "Mario Del Toro-Sandoval" vs. "Mario Alfonzo Deltoro."  Defendant contends that the other alleged alias—Cauhtemoc Longoria-Mendez, a name under which he was arrested but not prosecuted in the 2009 conviction—wasn't an alias at all.  Instead, his counsel reported that Longoria-Mendez is the

Next, the court recites the governing legal standard and standard of review.

## III.    LEGAL STANDARD & STANDARD OF REVIEW

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act, 18 U.S.C. §§ 3141–3156, provides one exception. The Bail Reform Act "establishes a two-step process for detaining an individual before trial." *United States v. Ailon-Ailon*, 875 F.3d 1334, 1336 (10th Cir. 2017).

For the first step, the Act authorizes the government to move for a pre-trial detention hearing

> if the defendant has been charged with certain enumerated offenses or "in a case that involves a serious risk that such person will flee; or a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror."

*United States v. Ailon-Ailon*, 875 F.3d 1334, 1336 (10th Cir. 2017) (ellipses omitted) (quoting 18 U.S.C. § 3142(f)). From these options, the government chose to invoke the theory that Mr. Del Toro-Sandoval presents a serious risk of flight.[3] "The government must prove risk of flight by a preponderance of the evidence[.]" *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

---

name of a friend who was detained by immigration officials at the same time as defendant. The court lacks information to assess the bona fides of this explanation. So, bottom line, the court rejects the government's proposition that defendant used an alias during his 2002 arrest and prosecution in Tarrant County, Texas. *See* Doc. 11 at 4. And the court can't accredit the government's proposition or Mr. Del Toro-Sandoval's explanation for the Longoria-Mendez name in 2009. That is, the court has no information that permits it to discern whether *the defendant* used that name as an alias or, instead, arresting authorities confused his name and that of a friend who they arrested at the same time.

[3]    The government argues vaguely that Mr. Del Toro-Sandoval presents a danger to the public, Doc. 12 at 9, which is something the court must consider at step two. But a danger to the public writ large doesn't answer the question at step one: Is there "a serious risk that" Mr. Del Toro-Sandoval "will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror"? § 3142(f)(2)(B). And indeed, the government's filing doesn't rely on § 3142(f)(2)(B).

If the government shoulders its step-one burden, then, at step two, a judicial officer must hold a hearing where the government must show "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). Congress has specified four factors to determine whether any conditions of release will assure the appearance of a defendant:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The government has asked the court to review the Magistrate Judge's decision releasing Mr. Del Toro-Sandoval until trial. This request invokes 18 U.S.C. § 3145(a)(1). "The standard of review for the district court's review of a magistrate judge's detention or release order under § 3145(a) is de novo." *Cisneros*, 328 F.3d at 616 n.1.

## IV.   ANALYSIS

The court analyzes the two steps of the pretrial-detention inquiry, in turn, below.

### A. Risk of Flight

At step one, the court must determine whether Mr. Del Toro-Sandoval presents a serious risk of flight. § 3142(f)(2)(A).[4] The Tenth Circuit hasn't considered the government's burden on this exact showing, but other courts have applied a preponderance-of-the-evidence standard. *See United States v. Cook*, 87 F.4th 920, 925 (8th Cir. 2023). And, at the hearing itself, the government must prove risk of flight by a preponderance. *Cisneros*, 328 F.3d at 616. So, the court applies that standard here, though one rationally could argue that a lower standard should apply.

Mr. Del Toro-Sandoval has demonstrated a willingness to cross our country's borders illegally, even after direct and explicit instructions not to do so. He has a network of family support in Mexico, one that can provide him an easy place to land outside this country. And the pending charge carries a real potential for meaningful time in a United States prison. Mr. Del Toro-Sandoval lacks strong ties to any community. Though his wife owns a house in Waco, Texas, Mr. Del Toro-Sandoval doesn't reside there all the time. Most recently, he resided in a short-term rental in Iola, Kansas.

---

[4]    At the initial appearance in early June, the government asked for a detention hearing under a different theory. It argued that Mr. Del Toro-Sandoval presented a danger to the community, as required to trigger a detention hearing under § 3142(f)(2)(B). Doc. 16 at 2. The government no longer pursues this theory of danger under § 3142(f)(2)(B). Doc. 12 at 1 (asking court to detain Mr. Del Toro-Sandoval under 18 U.S.C. § 3142(f)(2)(A)). And for good reason. The court has no trouble finding that Mr. Del Toro-Sandoval doesn't present a danger to the community. His lone conviction for anything violent is more than two decades old and, as explained below, isn't as bad as it sounds. Nothing else in the record suggests a danger.

The court finds that this defendant presents a "serious risk that [he] will flee."

§ 3142(f)(2)(A).  The court thus finds that Congress has authorized it to convene a detention

hearing.[5]

### B.  Conditions Assuring Appearance:  § 3142(g) Factors

At step two, to justify detention, the government must show "that no condition or

combination of conditions will reasonably assure the appearance of the person as required and

the safety of any other person and the community[.]"  § 3142(e)(1).[6]  To warrant detention under

this community-safety prong, the government must establish risk to community safety by clear

and convincing evidence.  *See, e.g.*, *United States v. Slayden*, No. 17-10154-JWB, 2018 WL

2388908, at *3 (D. Kan. May 25, 2018) ("The Government must prove dangerousness to any

other person or the community by clear and convincing evidence." (quotation cleaned up)).  But

during the review proceedings, the prosecution disclaimed the safety prong of this standard.[7]

---

[5]      At the June 25 hearing, Mr. Del Toro-Sandoval argued that the government had failed to establish such a serious risk.  That is, at the hearing, Mr. Del Toro-Sandoval objected to holding the hearing at all. The Magistrate Judge previously granted the government's motion for a detention hearing, finding "good cause" for such a hearing.  Doc. 7.  Mr. Del Toro-Sandoval didn't move for the court to review this decision.  And it's not clear if he could have done so.  The statute governing this court's review of magistrate judge orders, § 3145, imagines parties moving to revoke the magistrate judge's order of release or detention—not appealing the initial decision to hold a hearing.  *See* § 3145(a), (b).

The court needn't wade all the way through this procedural swamp because the government re-argues now that Mr. Del Toro-Sandoval presents a serious risk of flight.  *See* Doc. 12 at 4.

[6]      Subsection (e) contains two other options for the government to justify detention:  (1) a rebuttable presumption based on certain prior convictions committed while on release within the last five years, § 3142(e)(2), and (2) a rebuttable presumption based on probable cause that the defendant committed certain enumerated federal offenses, § 3142(e)(3).  The government hasn't invoked either of those presumptions here.  *See generally* Doc. 12.

[7]      The government's written materials assert that Mr. Del Toro-Sandoval "is a danger to the community and no condition or combination of conditions will reasonably assure his appearance."  Doc. 12 at 5.  But the government, at the hearing, abandoned the theory that Mr. Del Toro-Sandoval threatened the safety of any person or the community.  That was the right call.  *See above* n.4.

Thus, the court's analysis here only considers whether conditions of release reasonably can assure Mr. Del Toro-Sandoval's appearance.

The court already has decided whether Mr. Del Toro-Sandoval presents a risk of flight. He does, and it's a sufficient risk to qualify as a serious risk warranting a detention hearing. But this threshold finding doesn't end the matter because the analysis required by the Bail Reform Act continues. The next level of analysis requires the court to decide whether pretrial conditions reasonably can assure his appearance as this prosecution requires. *See* § 3142(g). After framing this ultimate question, this provision continues—supplying four sets of factors courts must use to answer it. Below, the court assesses all four sets of factors. § 3142(g)(1)–(g)(4).

### 1. Nature and Circumstances of Offense Charged

Subsection (g)(1) of section § 3142 directs the court to consider "the offense charged"—and this evaluation "include[es] whether the [charged] offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or [one that] involves a minor victim or a controlled substance, firearm, explosive, or destructive device." § 3142(g)(1). The United States readily concedes that this statute doesn't reach the lone charge against Mr. Del Toro-Sandoval here. The government thus concedes that "[t]his factor weighs in favor or release." Doc. 12 at 5. The court accepts the government's concession, so this factor thus favors defendant's release.

### 2. Weight of Evidence

The statute next directs the court to consider the weight of the evidence against the accused person. § 3142(g)(2). The United States persuasively proffers that immigration authorities twice have removed Mr. Del Toro-Sandoval from the United States. Also, the prosecutor asserts, he has accepted "3 additional voluntary removals after being discovered" in the United States unlawfully. Doc. 12 at 5–6. Nothing confirms this assertion, but defendant

didn't challenge it during the review hearing.  In addition, the government asserts that Mr. Del Toro-Sandoval "gave a post-*Miranda* statement after his arrest" that led to this case and, in it, he admitted he was in the United States "illegally."  *Id.* at 6.

The Pretrial Services Report corroborates at least part of the government's assertions.  It reports two federal court cases where Mr. Del Toro-Sandoval was found guilty of Illegal Entry and Illegal Reentry.  The first conviction entered in 2009.  A little more than a year later, authorities arrested defendant again on charges leading to his second conviction.  Doc. 11 at 4. And while no evidence supports the rest of the government's assertion, defendant never disputed them at the hearing on the government's motion for review.  This factor in § 3142(g)(2) strongly favors detention.

### 3.  History and Characteristics

§ 3142(g)(3) directs the court to consider the defendant's history and characteristics.  This provision then continues with a list of constituent considerations.  Specifically, § 3142(g)(3) identifies the following twelve subfactors:  defendant's character; his physical and mental conditions; family ties; employment; financial resources; length of residence in the community; community ties; past conduct; history related to drug or alcohol abuse; criminal history; record concerning appearance at court proceedings; and whether, when arrested on the current charge, defendant was on probation, parole, or otherwise completing a criminal law sentence.  Here, some of these twelve factors are neutral, some favor release, and others favor detention.

The court makes specific findings about each one of this section's twelve factors below, and briefly explains those findings.  Some of the twelve cover the same factual material, so, for efficiency's sake, the court discusses those factors together.  At bottom, these twelve statutory factors, on balance, favor detention.

*Neutral factors*:  Three of the twelve—defendant's record for appearing at court proceedings, his physical and mental condition, and his employment—qualify as neutral factors. On Mr. Del Toro-Sandoval's record of appearing, the record available to the court is hardly a fulsome one.  There's no record that he has failed to appear for any court proceedings shown in the Pretrial Services Report.  *See* Doc. 11 at 4 (listing earlier cases in federal and state court in Texas).  But there's no evidence suggesting that defendant, in fact, voluntarily appeared. Without any evidence one way or the other, this factor is neutral and won't play a role in the court's decision.

Defendant's mental and physical condition also are neutral.  No information suggests that defendant suffers from a mental condition or illness that renders him unreliable.  It's equally true, however, that the record contains no information suggesting he's free of concerning mental health conditions.  The record's simply silent and so, the court views the mental health half of this consideration neutral.  In contrast, the record contains at least some information about defendant's physical condition.  Mr. Del Toro-Sandoval reports he has diabetes, high blood pressure, and high cholesterol.  Without any evidence about how Mr. Del Toro-Sandoval currently is treating these conditions, or what kind of treatment he would receive in pretrial detention, the court lacks facts that might tip this factor in one direction or another.  The court thus finds that his physical condition, like his mental condition, is a neutral factor.

On the last of the neutral factors, the court considers defendant's employment neutral. Mr. Del Toro-Sandoval reported that he works as a contract welder, his work is seasonal, and it was this work that brought him to Kansas (where he committed the driving offense leading to this case's Indictment).  Steady and productive work undoubtedly is a positive, but other facts limit its value here.  This work leads Mr. Del Toro-Sandoval to go where the work is, so it's not

12

the kind of employment or work that builds stable and lasting ties to one location.  It's just the opposite—it requires him to move around the map.  He goes where the work is.  To his credit, Mr. Del Toro-Sandoval has offered to mitigate his work-based movement, passing on the traveling work while the charge here remains pending.  But that offer, in effect, nullifies the value of Mr. Del Toro-Sandoval's steady work.  And it's why the court views this employment consideration as a neutral factor.[8]

*Factors Favoring Release*:  Three of § 3142(g)(3)'s twelve considerations favor release.  Mr. Del Toro-Sandoval wasn't on probation, parole, or otherwise completing a criminal law sentence.  *See* § 3142(g)(3)(B).  Likewise, defendant has a limited history of drug and alcohol use.  Mr. Del Toro-Sandoval reported he last used alcohol six years ago.  And he reported last using cannabinoids 32 years ago.  He's never required substance-abuse treatment.  The defendant's wife confirmed the essence of this report, reporting that she's never known him to use illegal substances.  *See* Doc. 11 at 4.  Last, defendant's criminal history is limited and dated.  He has two illegal entry convictions from 2009 and 2010.  And he has a 2002 conviction for "Deadly Conduct" in Texas state court.  But this offense's bark is much worse than its bite.  *Id*.  The Texas court sentenced Mr. Del Toro-Sandoval to "confinement" but suspended that custody

---

[8]     The government argued at the hearing that Mr. Del Toro-Sandoval's work arrangement violated the law because he's not present in the country legally.  This argument doesn't impress the court.  For one thing, it glosses over the uncertainty about the essence of defendant's working arrangement.  His wife referred to his work as contract welding.  The defendant, in contrast, refers to his work relationship as "employment."  *See* Doc. 11 at 2.  The government never makes any argument that a contractor relationship violates the law.  And even if one views defendant's work arrangement as tantamount to employment—as the government seems to do—the government's view that his arrangement is "illegal" grossly oversimplifies a question that's much more nuanced than the government's argument recognizes.  Regulatory authority provides that some "aliens" legally may hold employment within the United States.  *See, e.g.*, 8 C.F.R. § 274a.12(a)(1)–(20), (b)(1)–(22).  Neither the government nor defendant provided any information suggesting whether Mr. Del Toro-Sandoval qualifies for any of those provisions.  Instead, the government's argument merely generalizes and argues in unhelpfully broad terms.  And the government bears the burden on the question of detention.  Absent much more information than it has provided, the court's unwilling to subscribe to the government's sweeping and unsupported generalization.

sentence and granted him 12 months' probation. *Id.* He was discharged from probation, so the court infers that he completed it successfully. In sum, the court finds that these three components of § 3142(g)(3)'s factors favor release.

*Factors Favoring Detention*: The court finds that six of § 3142(g)(3)'s twelve factors favor detention. It discusses each one, next.

Both defendant's past conduct and character favor detention. Twice, a court of the United States has found Mr. Del Toro-Sandoval guilty of entering the United States illegally. In 2009, the United States District Court for the Western District of Texas convicted him of illegal entry and sentenced him to six months in federal prison. The court infers that immigration authorities expelled him from the United States at the end of this sentence on February 1, 2010. Doc. 11 at 4. Seven months later, authorities found defendant inside the United States again. The same Texas federal district court convicted Mr. Del Toro-Sandoval again, this time for illegal *re*entry. It sentenced him to federal prison for eight months. And then, the court again infers, immigration authorities expelled him from the country on April 7, 2011, at the end of his sentence. *Id.* It stands to reason that defendant knew well about restrictions forbidding him from re-entering the United States after these two convictions and deportations. Yet he re-entered. This conduct manifests disrespect for the laws of the United States. And this disrespect reveals a component of his character that, the court finds, renders him unlikely to honor new restrictions imposed by this federal judicial district, *i.e.*, conditions governing pretrial release. These two factors strongly disfavor release.[9]

---

[9]    This conclusion does not suggest that Mr. Del Toro-Sandoval, graded more broadly, is a person of overall bad character. Indeed, some aspects of his history reflect well on him. His criminal record is limited, and he seems motivated to work and treat his family responsibly. But the aspect of his character that matters most to the current inquiry—respect or disrespect for mandates by a United States court—do not play out well for him. Unfortunately, for Mr. Del Toro-Sandoval, this is the aspect of his character that drives the decision the court now must make.

14

Mr. Del Toro-Sandoval's family ties also favor detention.  His father is deceased, and his mother resides in Mexico.  The defendant reported that his three sisters also reside in Mexico.  Defendant reported that he has daily contact with his mother and regular contact with his sisters.  Also, his past conduct shows that he's skilled at navigating the international boundary between the United States and his native Mexico.  These family ties, combined with his experience successfully crossing borders illegally, provide him with access to a ready landing ground for escape to a foreign country—one where re-arrest and extradition are uncertain.[10]

Defendant's financial resources favor detention, albeit only in slight fashion.  His net worth is low, and more than 97% of it is tied up in one vehicle.  He easily could liquidate his principal asset and remove that liquidated value from the United States.  In short, Mr. Del Toro-Sandoval has no meaningful financial ties binding him to this judicial district, or even the United States as a whole.  And that asset, one that consumes almost all his wealth is sufficient to fund an effort to depart from the United States.

Mr. Del Toro-Sandoval's community ties and length of residence in the community both favor detention but again, only slightly so.  All his community ties are past ties to other places, *i.e.*, various cities in Texas and Mexico.  And as already mentioned, his wife has lived in the same home for 28 years.  Mr. Del Toro-Sandoval, if released, would live there with her.  But this arrangement would be a new one, for defendant in recent years has lived wherever his work took him.  In short, his wife has some stable community ties.  But Mr. Del Toro-Sandoval does not.

---

[10]    The court is mindful that Mr. Del Toro-Sandoval's wife owns a house and resides in Waco, Texas. She has resided in that house for the last 28 years.  So, this is a fact representing stability and ties to the United States.  But it isn't a powerful one here because that tie to the community is his wife's connection to this country, not his.  And it doesn't nullify his access to escape to Mexico.  This Texas connection, the court finds, doesn't offset other aspects of his family ties.

His work makes him a wanderer, and renders his ties to the Texas community where his wife lives are limited and fleeting ones.

*Summary*:  Three of § 3142(g)(3)'s factors are neutral.  Three favor release.  And six of this provision's factors favor detention.  Thus, § 3142(g)(3) favors detention.

### 4.    Nature and Seriousness of Danger

The last part of § 3142(g) directs the court to consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." § 3142(g)(4).  The court already has considered this question and concluded that this defendant doesn't present a danger to any person or, more broadly, the community.  *See above* n.4.  Thus, this factor favors release.

### C.    Summary:  Will conditions of release "reasonably assure" defendant's appearance?

In sum, two of the § 3142(g) factors favor release and two favor detention.  The court gives greater weight to the weight-of-the-evidence factor and the history-and-characteristics factor.  The ultimate question, then is "whether there are conditions of release that will reasonably assure" his appearance, as required, in this matter.  § 3142(g).  But can the court find a condition or combination of conditions that will eliminate that risk—or at least mitigate it sufficiently to permit release?  The court finds no such combination.

As already explained, this defendant has minimal family, financial, and community ties to the United States.  While his wife lives here, the court's unwilling to rely on that marital relationship to produce his appearance.  Nor will that connection offset the greater family ties defendant has to family living in Mexico.  And the court finds that location monitoring won't provide the requisite assurance.  Defendant's history, characteristics, and past conduct deprive

16

the court of confidence that defendant would honor the structure that location monitoring, in theory, could provide.

The court thus finds that there is no condition or combination of conditions that reasonably will assure defendant's appearance as required for this matter.

## V.    CONCLUSION

The court grants the part of the government's "Application for Stay and Revocation of Magistrate Judge's Release Order" (Doc. 15) that requests that the court revoke the magistrate judge's order of release.[11]  The court construes the government's "Appeal/Review of Magistrate Judge's Order of Release" as a supplemental motion and grants that motion, too.

The court orders Mr. Del-Toro Sandoval detained under 18 U.S.C. § 3142(e) and (i).[12]  As required by 18 U.S.C. §§ 3142(i)(2)–(4), the court orders Mr. Del Toro-Sandoval committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  Mr. Del Toro-Sandoval must be afforded reasonable opportunity for private consultation with counsel of record in this case.  On order of a court of the United States, or on request of any attorney for the government, the person in charge of the corrections facility where Mr. Del Toro-Sandoval is confined must deliver Mr. Del Toro-Sandoval to a United States Marshal for the purpose of appearing in connection with court proceedings.

---

[11]    The court previously granted the motion in part.  Doc. 17.  Specifically, the court granted the government's request to stay the Magistrate Judge's order to allow for this court to hold a hearing and review the decision.

[12]    The government asks the court to detain Mr. Del Toro-Sandoval under § 31432(f)(2)(A).  Doc. 12 at 1.  That's the incorrect provision.  Subsection (f) governs detention hearings.  The authority to order a person detained lies in subsection (e).  § 3142(e)(1).

**IT IS THEREFORE ORDERED BY THE COURT THAT** the part of the government's Motion for Stay of Execution, Motion to Revoke Magistrate Judge's Release Order (Doc. 15) that asks the court to revoke the Magistrate Judge's Release Order is granted.

**IT IS FURTHER ORDERED THAT** the government's Motion for Review (Doc. 12) is granted.

**IT IS SO ORDERED.**

**Dated this 8th day of July, 2026, at Kansas City, Kansas.**

<u>**s/ Daniel D. Crabtree**</u>
**Daniel D. Crabtree**
**United States District Judge**